**Gerri JACKSON, Plaintiff,**

**v.**

**The CITY OF MARKHAM, ILLINOIS; Evans R. Miller, Mayor of the City of Markham, in his official and individual capacities; Theodore Clayton, Chief of Police of the City of Markham, in his official and individual capacities; and Markham Police Officers David Bronnell, I. McDonald, and Frank Pence, in their individual capacities, Defendants.**

**No. 90 C 4071.**

United States District Court, N.D. Illinois, E.D.

Aug. 22, 1991.

Jane M. Whicher, Harvey Michael Grossman, Roger Baldwin Foundation of ACLU, Inc., Edward Ted Stein, Chicago, Ill., for plaintiff.

William E. Elston, Jr., William E. Elston, Jr., Robert C. Gislason, George Edward Weaver, Law Office of George E. Weaver, Chicago, Ill., for defendants.

## MEMORANDUM OPINION
## AND ORDER

ANN C. WILLIAMS, District Judge.

Plaintiff Gerri Jackson filed suit against the City of Markham, Illinois, Mayor Evans R. Miller, Chief of Police Theodore Clayton, and Markham police officers David Bronnell, I. McDonald and Frank Pence, alleging that defendants violated her rights under the First, Fourth and Fourteenth Amendments to the Constitution by causing and/or effectuating her arrest when she attempted to walk in front of the Markham Roller Rink with a sign that said "Children are hurt here." On the same day plaintiff filed her complaint, plaintiff filed a separate motion for a preliminary injunction which would bar defendants and their agents from arresting plaintiff while she walked on the sidewalk or the shoulder of Dixie Highway in front of the Markham Roller Rink with her sign. The court referred plaintiff's motion for a preliminary injunction to Magistrate Judge Rosemond for a report and recommendation. The Magistrate Judge recommended granting plaintiff's motion for a preliminary injunction and, for the following reasons, the court agrees with the Magistrate Judge's conclusion.

### Background

The Markham Roller Rink, located at 16630 South Dixie Highway in Markham, Illinois ("the rink"), is owned by Markham Roller Rink, Inc. Defendant Evans Miller, Mayor of Markham, is the primary shareholder of the corporation which owns the rink. The rink is located on the west side of Dixie Highway. Dixie Highway has two lanes of traffic running in each direction. West of the center line of the highway, in front of the rink, there is a shoulder, a curb and a concrete sidewalk adjacent to the curb. Defendant Miller states that he "built the concrete strip to allow [the rink's] patrons to exit their vehicles on South Dixie Highway and enter [the] rink without having to walk on [the] grass."

Affidavit of Evans R. Miller, attached as Ex. A to Defendant Miller's Objections to Magistrate Judge's Report, at ¶ 3. According to an affidavit submitted by an official for the Illinois Department of Transportation, the sidewalk to which defendant Miller refers is within the highway right of way, which extends 50 feet west of the highway center line. *See* Affidavit of Joseph J. Kostur, attached as Ex. D to Defendant Miller's Objections to Magistrate Judge's Report, at ¶¶ 4 and 6.

During the summer of 1989, plaintiff Gerri Jackson became concerned about the treatment of children at the rink after her son was injured by Mayor Miller's son at the rink.[1] On August 26, 1989 plaintiff and others walked on the sidewalk in front of the rink. Plaintiff carried a sign which said "Children are hurt here." Defendants Chief of Police Clayton and Mayor Miller told plaintiff she had to move off the Mayor's property. She moved onto the shoulder of Dixie Highway. Chief Clayton then told plaintiff she could not stand on the shoulder, and threatened to arrest her if she did not leave. Plaintiff and her group then walked north on Dixie Highway and stood on the shoulder of the highway in front of the property immediately north of the rink with their signs.

On September 2, 1989, plaintiff and others walked on the shoulder of Dixie Highway, carrying their signs expressing their concern over the treatment of children at the rink. Plaintiff was approached by defendants Chief Clayton and Mayor Miller and Chief Clayton told plaintiff she could not walk and display her sign on the shoulder of the highway. Chief Clayton then arrested plaintiff and charged her with violating Ill.Rev.Stat. ch. 95½, ¶ 11–1007(a). This statute provides that "[w]here a sidewalk is provided and its use is practicable, it shall be unlawful for any pedestrian to walk along and upon an adjacent roadway." Plaintiff was tried on this charge on September 26, 1989, without counsel, and she was convicted and fined $2.50.

---

**1.** As a result of this incident, the Mayor's son was convicted of battery in Circuit Court and he will be sentenced on September 5, 1991.

On September 30, 1989, plaintiff walked with her sign on the sidewalk in front of the rink. Defendant police officers McDonald and Pence approached her and told her that if she did not leave defendant Miller was going to sign a complaint against her. She then moved to the property north of the rink and was again arrested for violating Ill.Rev.Stat. ch. 95½, ¶ 11–1007(a). At the trial on this charge, on October 13, 1989, plaintiff was represented by counsel. The judge directed a verdict for plaintiff.

Between September 30 and October 13, plaintiff did not demonstrate at or near the rink because of her fear of being arrested. *See* Affidavit of Gerri Jackson, attached as Ex. B to Defendant Miller's Objections to Magistrate Judge's Report, at ¶ 15. On October 14, 1989, plaintiff returned to walk with her sign on the sidewalk in front of the rink. Defendant police officer McDonald approached her and told her she was on Mayor Miller's property and that she must leave or be arrested. When plaintiff continued to walk on the sidewalk with her sign, she was placed under arrest, and taken to the Markham police station. Mayor Miller signed a complaint charging plaintiff with criminal trespass in violation of Ill.Rev.Stat. ch. 38, ¶ 21–3(a). The trial date on this charge was continued three times, and each time plaintiff took time off from work to appear, and the arresting officer (McDonald) and defendant Miller failed to appear. Finally, on February 14, 1990, upon motion of the Assistant State's Attorney, the trespass charge was dismissed. Plaintiff asserts that she has not been back to the rink since October 14 because of her fear of being arrested. *See* Affidavit of Gerri Jackson at ¶ 21.

### Discussion

In order to prevail on her motion for a preliminary injunction, plaintiff has the burden of establishing:

(1) that [she] has no adequate remedy at law; (2) that [she] will suffer irreparable harm if the preliminary injunction is not issued; (3) that the irreparable harm [she] will suffer if the preliminary injunction is not granted is greater than the irreparable harm the defendant[s] will suffer if the injunction is granted; (4) that [she] has a reasonable likelihood of prevailing on the merits; and (5) that the injunction will not harm the public interest.

*International Kennel Club v. Mighty Star, Inc.*, 846 F.2d 1079, 1084 (7th Cir. 1988), *quoting, Brunswick Corp. v. Jones*, 784 F.2d 271, 273–74 (7th Cir.1986). The Magistrate Judge found that plaintiff had carried her burden on all the aforementioned factors and, as the following discussion will illustrate, the court agrees.

### *Likelihood of Success on the Merits* [2]

■ In order to satisfy this prong of the preliminary injunction analysis, "a plaintiff need only demonstrate that he or she has a 'better than negligible' chance of succeeding on the merits to justify injunctive relief." *International Kennel Club*, 846 F.2d at 1084, *quoting, Curtis v. Thompson*, 840 F.2d 1291, 1296 (7th Cir. 1988). Jackson maintains that she has a "better than negligible" chance of succeeding on the merits because "as a general matter peaceful picketing and leafleting are expressive activities involving 'speech' protected by the First Amendment." *United States v. Grace*, 461 U.S. 171, 176, 103 S.Ct. 1702, 1706, 75 L.Ed.2d 736 (1983). Moreover, she asserts that the locations where she attempted to picket, the sidewalk and the shoulder of the highway, which are both within the public highway right-of-way, are traditional public fora where "[g]overnment authority to regulate speech ... is greatly limited." *Monterey County Democratic Central Committee v. United Postal Service*, 812 F.2d 1194, 1196 (9th Cir.1987). " '[T]ime out of mind' public streets and sidewalks have been used for public assembly and debate, the hallmarks of a traditional public forum." *Frisby v. Schultz*, 487 U.S. 474, 480, 108 S.Ct.

---

**2.** The court will consider the fourth prong, likelihood of success on the merits, first because the determination of the other factors rests, at least in part, on whether plaintiff has a First Amendment right to walk with her sign in front of the rink.

2495, 2499, 101 L.Ed.2d 420 (1988), *quoting, Hague v. CIO*, 307 U.S. 496, 515, 59 S.Ct. 954, 963–64, 83 L.Ed. 1423 (1939). "Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public." *Hague*, 307 U.S. at 515, 59 S.Ct. at 964. Thus, plaintiff Jackson argues that the seemingly inconsistent application of the state criminal laws to her activities,[3] with the apparent intention of chilling her speech, is a violation of her First Amendment rights and must be enjoined.

Defendants argue that plaintiff is not likely to succeed on the merits because the sidewalk at issue is not a public walkway. Defendants maintain the sidewalk is private property, and thus plaintiff can be excluded from it, because Markham Roller Rink, Inc. paid for its installation. In making this argument, defendants overlook the affidavit of Illinois Department of Transportation ("IDOT") Safety and Claims Manager Joseph Kostur. As noted above, Mr. Kostur states that the sidewalk at issue is within the highway right of way, which is operated and maintained by the IDOT. *See* Affidavit of Joseph J. Kostur at ¶ 6. The affidavit also indicates that Markham Roller Rink needed to get a permit from the state before building the sidewalk and failed to do so. *See id.* at ¶ 5. Defendants cite no case law or statutory authority to support their contention that merely paying for the installation of a sidewalk, when the sidewalk is located within a public right of way, makes the sidewalk private property.

In contrast, plaintiff cited several cases that indicate that the public has the primary right to use the streets and sidewalks and that property owners cannot interfere with the public's rights in this regard. For example, in *Salem National Bank v. City of Salem*, 47 Ill.App.2d 279, 198 N.E.2d 137, 140 (5th Dist.1964), the court stated that "[t]he general public has the para-

mount right to use the streets and sidewalks but the abutting property owner has the right to make all proper and reasonable use of the sidewalks not inconsistent with the paramount right of the public." Similarly, in *Peoples Gas Light & Coke Co. v. City of Chicago*, 413 Ill. 457, 109 N.E.2d 777, 781 (1952), the Illinois Supreme Court stated that the "right of the people in the streets and highways of the State, whether inside or outside the municipalities thereof, is a paramount right." While the aforementioned cases did not involve sidewalks which were paid for by private citizens, the general principles enunciated in the cases seem equally applicable to a privately financed sidewalk which is built within a public right of way.

Defendants also argue that the sidewalk is private property from which plaintiff can be excluded because it does not connect up with any other sidewalks. In support of this argument defendants cite *Monterey County Democratic Central Committee v. U.S. Postal Service*, 812 F.2d 1194 (9th Cir.1987). However, in *Monterey County* neither party contended that the walkway at issue, which led into a post office, was private property. Both sides agreed that the walkway was situated on publicly owned property. The question in that case was whether the post office could limit which groups could conduct voter registration on the walkway. The court found that the post office could regulate which groups would be allowed to conduct voter registration because the walkway was somewhat isolated and therefore it was not a traditional public forum.

In contrast, in the case at bar, defendants have not made a compelling argument that the sidewalk at issue is not a traditional public forum. Although it is not connected to other sidewalks, it is situated adjacent to a public highway and it is locat-

---

**3.** It was necessarily inconsistent for defendants to arrest Jackson both for walking on the shoulder and for walking on the sidewalk. In order to arrest a person for walking on the shoulder, pursuant to Ill.Rev.Stat. ch. 95½, ¶ 11–1007, "a sidewalk [must be] provided and its use [must be] practicable." However, when Jackson walked on the sidewalk, she was arrested for

criminal trespass. This indicates that there was not a sidewalk provided and that she should not have been arrested for walking on the shoulder. In the alternative, if defendants considered the sidewalk to be available and practicable, Jackson should not have been arrested for trespass when she walked upon it.

ed within the right of way of the highway. Unlike the walkway in *Monterey County,* the sidewalk at issue is not so isolated that it "indicates to all who approach ... that it is not a thoroughfare for passersby intent on other errands." *Id.* at 1197. Furthermore, in the case at bar defendants do not want to regulate speech on the sidewalk—they want to prohibit speech altogether on the grounds that the sidewalk is private property and that it is only intended for the use of rink patrons. This critical distinction makes *Monterey County* inapplicable to the instant case.

Defendants can make no argument that the shoulder is private property, yet plaintiff was arrested for picketing on the shoulder as well. Defendants seem to contend that plaintiff's arrests for walking on the shoulder were reasonable "time, place and manner" regulations of her speech, given that there is a sidewalk located on the east side of Dixie Highway upon which she could have picketed. However, this argument ignores the fact that the statute only prohibits walking on the shoulder of a roadway if there is a sidewalk available *adjacent* to the shoulder, not if there is a sidewalk available across the street from the shoulder.

Moreover, defendants do not dispute, by way of counter-affidavit or other evidence, plaintiff's contention that she could not reach her intended audience from across the street because the sidewalk on the east side of the highway is separated from the rink by four lanes of traffic and a parkway which contains a row of trees. *See* Supplemental Affidavit of Gerri Jackson, attached as Ex. C to Defendant Miller's Objections to the Magistrate Judge's Report, at ¶ 5. Therefore, even if defendants correctly applied the statute which regulates walking on the shoulder, it is questionable whether the statute would be considered a reasonable "time, place and manner" restriction given that in this case it does not "leave open ample alternative channels of communication." *Perry Education Assn. v. Perry Local Educators' Assn.,* 460 U.S. 37, 45, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983). For these reasons, the court finds defendants have not adequately disputed plaintiff's likelihood of success on the merits and that plaintiff does have a "better than negligible" chance of prevailing on her claims.

*Irreparable Harm and Adequate Remedy at Law*

■ The court finds that plaintiff has fulfilled her burden on both these prongs of the preliminary injunction analysis. First, plaintiff will suffer irreparable harm because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury" justifying injunctive relief. *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2689–90, 49 L.Ed.2d 547 (1976). As revealed by the discussion in the previous section, plaintiff is likely to succeed on her claim that defendants' actions violated her First Amendment rights. Moreover, Ms. Jackson's exercise of her First Amendment rights has been chilled by the threat of future arrests. She stated that she "has not been back to the rink since October 14 to walk with [her] sign, for fear of being arrested and prosecuted." Affidavit of Gerri Jackson at ¶ 22. Thus, under the aforementioned case law, she has suffered and will continue to suffer irreparable harm if the court does not grant her request for injunctive relief.

The finding that plaintiff's First Amendment rights most likely have been abridged, and will continue to be abridged without the granting of injunctive relief, also leads to the conclusion that plaintiff has no adequate remedy at law. Plaintiff will not be made whole by awarding her money damages if she prevails on the merits. Only an injunction preventing her arrest, and thereby allowing her to exercise her right to demonstrate in front of the rink, will make her whole. *Cf. Planned Parenthood Association v. Chicago Transit Authority,* 592 F.Supp. 544, 555 (N.D.Ill.1984) (no adequate remedy at law for exclusion of plaintiff's abortion-related advertising from CTA vehicles).

*Balance of Hardships*

■ The court has already found that plaintiff will suffer irreparable harm if the

preliminary injunction is not issued. In contrast, the only harm defendants contend will befall them if the preliminary injunction is issued is the intangible harm they claim will result from a federal court enjoining the local enforcement of state laws.[4] Defendants base this claim of harm on the case of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), in which considerations of comity between federal and state courts precluded the granting of injunctive relief. However, *Younger* is not applicable to this case. *Younger* involved a request to enjoin a *pending* state court criminal prosecution. The *Younger* court stated that it expressed "no view about the circumstances under which federal courts may act when there is no prosecution pending in state courts at the time the federal proceeding is begun." *Id.* at 41, 91 S.Ct. at 749. In the instant case, no criminal prosecution is pending, but the threat of further prosecution is very real. As subsequent Supreme Court decisions have held, *Younger* principles do not preclude the granting of federal injunctive relief against future state prosecutions if the other conditions justifying injunctive relief are present. *See Wooley v. Maynard*, 430 U.S. 705, 712, 97 S.Ct. 1428, 1434, 51 L.Ed.2d 752 (1977) (Court held that where no criminal prosecution was pending, threat of repeated prosecutions could justify grant of injunctive relief); *Doran v. Salem Inn*, 422 U.S. 922, 930–31, 95 S.Ct. 2561, 2567–68, 45 L.Ed.2d 648 (1975) (Where no criminal prosecution was pending and where threat of irreparable harm and likelihood of success on the merits was shown, court could enjoin future prosecutions). Thus, because *Younger* cannot form the basis for defendants' claim of harm, the court finds that the balance of hardships tips decidedly in favor of plaintiff Jackson.

*Public Interest*

The court finds that Ms. Jackson satisfied this final prong of the preliminary injunction analysis in that the public interest will be served if a preliminary injunction is issued. As the Seventh Circuit stated in a case in which a preliminary injunction was issued to protect the plaintiff's First Amendment rights, "the public has a strong interest in the vindication of an individual's constitutional rights ... [and] in encouraging the free flow of information and ideas ..." *O'Brien v. Town of Caledonia*, 748 F.2d 403, 408 (7th Cir.1984). Similarly, in the case at bar, the public interest will be served by allowing Ms. Jackson to demonstrate and thereby add to "the free flow of information and ideas."

*Conclusion*

For the aforementioned reasons, the court grants plaintiff's motion for a preliminary injunction. It is hereby ordered:

The City of Markham, the current Police Chief[5], Mayor Evans R. Miller, their officers, agents, servants, employees and attorneys, and persons in active concert or participation with them who shall receive actual notice of this order by personal service or otherwise, including the individual defendant police officers, are enjoined from arresting or otherwise interfering with plaintiff, Gerri Jackson, and her associates while they are peacefully engaged in walking and carrying signs on the sidewalk, or when they are on the shoulder of the road in order to accommodate pedestrian traffic, in front of the Markham Roller Rink, 16630 South Dixie Highway in Markham, Illinois.

---

**4.** In his objections to the Magistrate Judge's report, defendant Miller for the first time contend that plaintiff's picketing is "quite harmful to defendant and his business." Defendant Miller's Objections to Magistrate Judge's Report at 12. However, defendant provides no evidentiary support for this assertion. Furthermore, harm to a person's business alone is not a lawful reason to deny First Amendment rights. *See NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 914, 102 S.Ct. 3409, 3426, 73 L.Ed.2d 1215

(1982) ("right of the States to regulate economic activity could not justify a complete prohibition against a nonviolent, politically motivated boycott").

**5.** The parties have indicated that Theodore Clayton is no longer the Chief of Police of Markham. The court intends this preliminary injunction to apply to the current Chief of Police.