Leigh S. BARKER, Katherine S. Stout, Bruce J. Oradei, Ronald Parys, Thomas H. Coenen, and Janet R. Swandby, Plaintiffs,

v.

STATE OF WISCONSIN ETHICS BOARD and James E. Doyle, Attorney General of the State of Wisconsin, Defendants.

No. 93–C–150–C.

United States District Court, W.D. Wisconsin.

March 12, 1993.

Robert H. Friebert, Milwaukee, WI, for plaintiffs.

Alan Lee, Asst. Atty. Gen., Madison, WI, for defendants.

## OPINION and ORDER

CRABB, Chief Judge.

This is a civil action for declaratory and injunctive relief in which plaintiffs seek to have defendants enjoined from preventing plaintiffs from volunteering personal services to any candidates in the up-coming special elections. In addition, plaintiffs seek a declaration that Wis.Stat. § 13.625(1)(b) is unconstitutional to the extent that it violates plaintiffs' First Amendment rights of association and freedom of expression. Before the court is plaintiffs' motion for preliminary injunction and defendants' motion to dismiss on the grounds that (1) the court lacks jurisdiction because there is no case or controversy; (2) the court should abstain from considering the matter; (3) plaintiffs lack standing; and (4) the complaint fails to state a claim upon which relief can be granted.

I conclude that this case is ripe for review because plaintiffs' First Amendment rights are being chilled; that defendants have shown no basis for abstention; and that plaintiffs have shown that they have a better than negligible chance of succeeding on their claim. Plaintiffs have shown also that they may suffer irreparable harm in the absence of a preliminary injunction, that the balance of harms is in their favor and that granting the preliminary injunction is not against the public interest. Therefore, the motion for preliminary injunction will be granted.

For the sole purpose of deciding this preliminary motion, I find from the findings of fact proposed by the parties that the following facts are not in dispute.

## FACTS

Plaintiffs in this action are licensed as lobbyists as defined in Wis.Stat. § 13.62(11). Defendant State of Wisconsin Ethics Board is a state agency created pursuant to Wis. Stat. § 15.62, and is responsible for adminis-

tering, enforcing and issuing opinions and promulgating rules with respect to Wis.Stat. § 13.625. Defendant James E. Doyle is Attorney General of the State of Wisconsin and has the authority to enforce § 13.625.

On January 27, 1993, defendant Ethics Board issued a formal opinion in response to a request by a registered lobbyist whether § 13.625(1)(b) prohibits a lobbyist from volunteering personal services to the campaigns of individuals running for partisan elective state office. The opinion states in part:

> In essence, [Wis.Stat. § 13.625(1)(b)] prohibits a lobbyist from furnishing anything of pecuniary value to an individual campaigning for partisan elective state office or to a partisan elected state officeholder except for campaign contributions during particular time periods. A campaign contribution is defined in section 11.01(6), Wisconsin Statutes, to exclude services provided by an individual for a political purpose on behalf of a candidate when the individual is not compensated specifically for such purposes. Personal services have been excluded from the definition of campaign contributions since the campaign finance law's inception in 1973.... Services having pecuniary value would include labor such as delivering campaign literature door to door, stuffing envelopes, constructing yard signs, telephoning citizens on a candidate's behalf, and similar campaign tasks that would require the use of paid labor if individuals did not volunteer.

> The Ethics Board advises that a lobbyist may not furnish personal services to the campaign of an individual running for partisan elective state office if those services are not reportable as a campaign contribution under the campaign finance law and if such services consist of labor for which a campaign would have to pay individuals if they did not volunteer.

On April 6, 1993, the State of Wisconsin is holding special elections for the purpose of filing vacancies in the 5th, 23rd, and 27th Wisconsin State Senate Districts, as well as a general spring election for the purpose of electing a State Superintendent of Public Instruction. Plaintiffs wish to volunteer personal services (such as putting up yard signs, delivering brochures, stuffing envelopes and making telephone calls) to the campaigns of one or more of the candidates in the upcoming special elections.

## OPINION

### A. *Ripeness*

■ To establish a justiciable claim under Article III, a plaintiff must allege "such a personal stake in the outcome of the controversy as to assure ... concrete adverseness ..." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962); *NAACP v. City of Richmond,* 743 F.2d 1346, 1350 (9th Cir.1984) (Article III limits the exercise of federal jurisdiction to actual cases and controversies). In determining whether a case is ripe for review, a court must evaluate whether "the requisite injury is in sharp enough focus and the adverseness of the parties concrete enough to permit a court to decide a real controversy and not a set of hypothetical possibilities." *Martin Tractor Co. v. Federal Election Comm'n,* 627 F.2d 375, 379 (D.C.Cir.), *cert denied,* 449 U.S. 954, 101 S.Ct. 360, 66 L.Ed.2d 218 (1980). Generally, in "an action seeking a declaratory judgment to protect against a feared future event, the plaintiff must demonstrate that the probability of the future event occurring is real and substantial, 'of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Salvation Army v. New Jersey Dep't of Community Affairs,* 919 F.2d 183, 192 (3rd Cir.1990) (quoting *Steffel v. Thompson,* 415 U.S. 452, 460, 94 S.Ct. 1209, 1216, 39 L.Ed.2d 505 (1974)).

■ Defendants assert that this case is not ripe because plaintiffs are essentially asking the court to evaluate the constitutionality of an advisory opinion issued by the Ethics Board. They contend that this case is analogous to *United States Defense Comm. v. Federal Election Comm'n,* 861 F.2d 765 (2d Cir.1988), where the court held that an advisory opinion rendered by the Federal Election Commission was not ripe for review. I conclude that even if the Ethics Board's advisory opinion is not ripe for review, plaintiffs' action can be construed as challenging the

constitutionality of Wis.Stat. § 13.625(1)(b) itself. Section 13.625 provides:

(1) No lobbyist may:

(b) Furnish to any agency official or legislative employe of the state or to any elective official or legislative candidate for an elective office ...

(1) Lodging.

(2) Transportation.

(3) Food, meals, beverages, money or any other thing of pecuniary value, except that a lobbyist may make a campaign contribution to a partisan elective state official or candidate

.　　.　　.　　.　　.

Campaign contributions are defined in § 11.-01(6) as not including "services for a political purpose by an individual who is not compensated for such services."

In their brief defendants contend that the Ethics Board's opinion is not an interpretation of § 13.625 because the statute is not ambiguous and does not need to be interpreted. Instead, the statute's prohibition against a lobbyist's furnishing anything of pecuniary value except for campaign contributions has been part of the lobby law since its inception. Moreover, the Ethics Board notes in its opinion that personal services have been excluded from the definition of campaign contributions since the campaign finance law's inception. The advisory opinion does not appear to conflict with or diverge from the statute on its face or from defendants' interpretation of the statute.

In *Abbott Labs. v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), the Supreme Court proposed a two factor test for ripeness, requiring the court to "evaluate both the fitness of the issue for judicial resolution and the hardship to the parties of withholding judicial consideration." In analyzing fitness for judicial resolution, the Court considered whether the issue was purely legal. Here, the issue is legal: whether the statute itself is constitutional. Moreover, the case does not involve merely an abstract consideration of hypothetical facts.

In evaluating possible hardship in *Abbott* the Court considered (1) whether the regula-

tions had a direct impact on the day-to-day activities of the parties challenging the regulations; and (2) the possible harms to the parties of delaying consideration. The Court concluded that the case was ripe because the legislation at issue produced "an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to nonconformance." *Id.* at 153, 87 S.Ct. at 1518. Here, the statute has had a direct impact on plaintiffs' activities and because of the imminence of the election, any delay in deciding this case could affect plaintiffs' First Amendment rights irreparably.

■■■ Defendants counter that even if plaintiffs are challenging the constitutionality of § 13.625(1)(b), a court cannot declare a statute unconstitutional when there is no allegation that it has or will be applied against plaintiffs. Rather, plaintiffs must wait until they have actually violated the statute and been prosecuted in order to challenge it. However, plaintiffs do not have to " 'await the consummation of threatened injury to obtain preventive relief.' " *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979) (quoting *Pennsylvania v. West Virginia*, 262 U.S. 553, 593, 43 S.Ct. 658, 663, 67 L.Ed. 1117 (1923)). This is especially true in the context of a First Amendment overbreadth attack on a statute. *See, e.g., Planned Parenthood Ass'n v. Kempiners*, 700 F.2d 1115, 1122 (7th Cir.1983) (requirements of ripeness are "less strictly construed in the first amendment context due to the chilling effect on protected expression which delay might produce"). If "such statute is alleged presently to be 'chilling' protected expression, that allegation by definition meets the ripeness requirement that the 'contentions of the parties ... present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract.' " *Indiana Voluntary Firemen's Ass'n v. Pearson*, 700 F.Supp. 421 (S.D.Ind.1988) (quoting *Babbitt*, 442 U.S. at 298, 99 S.Ct. at 2308); *Dombrowski v. Pfister*, 380 U.S. 479, 486, 85 S.Ct. 1116, 1120, 14 L.Ed.2d 22 (1965) (relaxed standard of ripeness exists in a First Amendment case because of the sensitive

nature of constitutionally protected speech). In a First Amendment suit alleging a chilling effect, "immediate and real injury is done to the plaintiff's interests if he does not speak or act as he says he wants to." *National Student Ass'n v. Hershey*, 412 F.2d 1103, 1111 (D.C.Cir.1969) (in such cases the court may rely on a credible threat of enforcement and plausible allegations of intent or desire to engage in the prohibited activity). The "[t]hreat of sanctions may deter [the exercise of first amendment rights] almost as potently as the actual application of sanctions." *Id.* at 1122 (quoting *Dombrowski*, 380 U.S. at 486, 85 S.Ct. at 1121). *See also National Student Ass'n v. Hershey*, 412 F.2d 1103 (D.C.Cir. 1969) (the chill on First Amendment freedoms induced by a selective service directive concerning participation in "illegal" antiwar protests was a sufficiently concrete harm to permit pre-enforcement examination of a constitutional challenge to the directive).

In this case, plaintiffs' First Amendment rights have been chilled. They have refrained from volunteering their personal services in the up-coming elections. If plaintiffs act in accordance with their wishes and volunteer their personal services, they could be subject to immediate threat of loss of livelihood for three years through possible revocation of their lobbying licenses, civil penalties of up to $1000 and possible criminal sanctions. *See* Wis.Stat. § 13.69(2), (7).

Defendants assert that this case is not ripe because there is no threat of prosecution or evidence that the statute had been enforced. The assertion is not compelling. In a case based on similar facts, the Court of Appeals for the Ninth Circuit held that a case was ripe although the applicable provisions of the California Election Code had never been enforced and enforcement had never been explicitly threatened. *San Francisco County Democratic Cent. Comm. v. Eu*, 826 F.2d 814, 821 (9th Cir.1987), *aff'd*, 489 U.S. 214, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989). In *Eu*, the party central committees brought an action challenging sections of the California Elections Code banning partisan pre-primary endorsements in part. The court distinguished the case from *Poe v. Ullman*, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961), in which the Court found that a state ban on contraceptives was not justiciable because the ban had never been enforced although contraceptives were open and notoriously sold. The court of appeals noted in *Eu* that there was no record that the statutory provisions banning pre-primary endorsements were violated "commonly and notoriously." *Id.* at 822. This case is similar: nothing in the record suggests that the statute has been violated commonly and notoriously. Also, the state has not disavowed its intent to enforce the statute. *Cf. Bowers v. Hardwick*, 478 U.S. 186, 201, 106 S.Ct. 2841, 2849, 92 L.Ed.2d 140 (1986). It is reasonable to believe that the state will enforce the statute against plaintiffs if they engage in volunteer services.

I find that plaintiffs' freedom of expression and association has been chilled and that this case is ripe for review.

### B. *Abstention*

 Federal courts are required to abstain from deciding a case when the state law is uncertain and a state court's clarification of the applicable law may render unnecessary a federal court's ruling on the constitutionality of the law. *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). *See also American Booksellers Ass'n v. Hudnut*, 771 F.2d 323, 327 (7th Cir.1985) (abstention "is appropriate when state courts may clarify the meaning of a statute, thus sharpening the constitutional dispute and perhaps preventing an unnecessary constitutional adjudication"). *Pullman* abstention is applicable where a federal constitutional issue might be mooted or presented in a different posture if a pertinent state law issue that is undecided were to be resolved in a particular way. *E & E Hauling, Inc. v. Forest Preserve Dist. of DuPage County*, 821 F.2d 433, 436 (7th Cir.1987). Defendants have failed to show that the statute at issue is ambiguous or susceptible to a construction that would avoid the constitutional issue before the court. They have not "advance[d] an interpretation of the [statute] that would moot the constitutional questions raised by plaintiffs." *Eu*, 826 F.2d at 825.

Furthermore, abstention is not proper because the resulting delay would have a signif-

icant negative impact on the exercise of plaintiffs' constitutional rights. Generally, "when voting rights, racial equality, and First Amendment rights of expression have been at stake, the court has been reluctant to abstain." 1A James W. Moore et al., *Moore's Federal Practice Digest,* § 0.203[1] (2d ed. 1991). Abstention in First Amendment cases would often result in suppression of speech and a chilling effect. Because this case involves First Amendment rights and does not involve a constitutional challenge to an ambiguous state law so as to require abstention pending resolution of the ambiguity by the state courts, *Pullman* abstention is not appropriate.

Finally, defendants do not argue that the court should abstain under any of the remaining abstention doctrines and there is no support in the record for abstention. This case does not involve an ongoing criminal or quasi-criminal proceeding implicating important state interests in which plaintiffs will be able to present their federal claims. *See Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). There is no parallel proceeding in another state or federal court, so as to render abstention appropriate under *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Also, the case does not involve the uniform administration of a complex state scheme to achieve an important state goal. *See Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

## C. Elements of Preliminary Injunction

A movant seeking a preliminary injunction must demonstrate: 1) some likelihood of success on the merits; and 2) that it will suffer irreparable harm absent injunctive relief. *Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 11 (7th Cir.1992) (citing *Lawson Prods., Inc. v. Avnet,* 782 F.2d 1429, 1433 (7th Cir.1986); *Roland Machinery v. Dresser,* 749 F.2d 380, 386–87 (7th Cir.1984)). If the moving party clears both hurdles, the court must then consider: 3) the irreparable harm the moving party will suffer balanced against the irreparable harm that will be suffered by the non-moving party if the injunction is granted; and 4) whether the injunction will harm the public interest. *Ab-*

*bott Laboratories,* 971 F.2d at 11–12; *Roland Machinery,* 749 F.2d at 387–88.

### 1. Likelihood of success on the merits

To satisfy the first requirement, plaintiffs must show that they have a better than negligible chance of prevailing ultimately on their claim that the state statute violates their First Amendment rights. *See, e.g., Omega Satellite Prod. Co. v. City of Indianapolis,* 694 F.2d 119, 123 (7th Cir. 1982) (all that is needed to satisfy this burden is that "plaintiff's chances are better than negligible"); *Milwaukee County Pavers Ass'n v. Fiedler,* 707 F.Supp. 1016, 1022 (W.D.Wis.1989) (plaintiffs need not show a substantial likelihood of success on the merits).

Plaintiffs assert that the statute infringes upon their First Amendment rights of freedom of political association and expression and is not narrowly drawn to further a compelling state interest. "Our form of government is built on the premise that every citizen shall have the right to engage in political expression and association." *Sweezy v. New Hampshire,* 354 U.S. 234, 250, 77 S.Ct. 1203, 1212, 1 L.Ed.2d 1311 (1957). The Supreme Court considers activities such as the distribution and reception of pamphlets, and especially campaign literature within the protection of the First Amendment. *Lovell v. City of Griffin,* 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938); *Piper v. Swan,* 319 F.Supp. 908, 910 (E.D.Tenn.1970). A major purpose of the First Amendment is to protect the free discussion of governmental affairs, including the discussion of candidates. *See, e.g., Mills v. Alabama,* 384 U.S. 214, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966).

A state statute impinging on First Amendment rights is subject to strict scrutiny. *See, e.g., Buckley v. Valeo,* 424 U.S. 1, 25, 96 S.Ct. 612, 637, 46 L.Ed.2d 659 (1976); *NAACP v. Alabama,* 357 U.S. 449, 460–61, 78 S.Ct. 1163, 1170–71, 2 L.Ed.2d 1488 (1958). However, the right of association can be impinged if "the state demonstrates a sufficiently important interest and employs means closely drawn to avoid unnecessary abridgment of associational free-

doms." *Buckley*, 424 U.S. at 25, 96 S.Ct. at 637 (citing *Cousins v. Wigoda*, 419 U.S. 477, 488, 95 S.Ct. 541, 548, 42 L.Ed.2d 595 (1975)). In this case the proposed state interest is to rid the political system of apparent and actual corruption and improper influence. However, it is possible that the statute is not narrowly tailored to this interest. The statute may be too broad because lobbyists are prevented from performing any personal services even those such as putting up yard signs or delivering political brochures; personal services are prohibited even during the limited period in which monetary contributions are permitted; the statute applies regardless of the amount or type of lobbying; and applies to all forms of services even if they are not likely to provide an opportunity for corruption. All plaintiffs need to show is that their chances of success are better than negligible. I find that they have made that showing.

### 2. *Irreparable harm*

To succeed on their motion for preliminary injunction, plaintiffs must establish that they will suffer irreparable harm without the injunction. *Roland Machinery*, 749 F.2d at 386. The " 'loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury' justifying injunctive relief." *Jackson v. City of Markham*, 773 F.Supp. 105, 109 (N.D.Ill. 1991) (quoting *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976)). *See also O'Brien v. Town of Caledonia*, 748 F.2d 403, 409 (7th Cir.1984) (even the temporary deprivation of First Amendment rights constitutes irreparable injury) (citing *Citizens for A Better Environment v. City of Park Ridge*, 567 F.2d 689, 691 (7th Cir.1975)). Plaintiffs have shown that without the injunction their First Amendment rights will continue to be abridged. Plaintiffs will not be made whole by awarding them monetary damages if they prevail on the merits. *Id.*

### 3. *Balance of harms*

It is necessary to determine whether the irreparable harm plaintiffs would suffer without an injunction outweighs any irreparable harm to defendants if the injunction is granted. *Roland Machinery*, 749 F.2d at 387. In this case, it is necessary to balance the harm plaintiffs would suffer from not being able to volunteer their personal services during the up-coming special election against the harm defendants would suffer in being unable to enforce the provision of § 13.625(1)(b) dealing with volunteer services. Because a constitutional right is at stake, plaintiffs have a more compelling argument for enjoining possible prosecution. The balance of harms weighs in favor of plaintiffs.

### 4. *Public interest*

Finally, in deciding a motion for preliminary injunction, the court must ensure that the injunction would not harm the public interest. *Roland Machinery*, 749 F.2d at 388 (citing *Yakus v. United States*, 321 U.S. 414, 440–41, 64 S.Ct. 660, 674–75, 88 L.Ed. 834 (1944)). In a case in which a preliminary injunction was issued to protect a plaintiff's First Amendment rights, the Seventh Circuit stated "the public has a strong interest in the vindication of an individual's constitutional rights." *O'Brien*, 748 F.2d at 408. Taking into consideration the significance of the constitutional right at stake and the danger that plaintiffs' rights could be irreparably damaged, I conclude that permitting plaintiffs to engage in the volunteer services discussed in the facts pending the outcome of the case does not disserve the public interest.

### ORDER

IT IS ORDERED that plaintiffs' motion for preliminary injunction is GRANTED and defendants' motion to dismiss is DENIED. While this preliminary injunction remains in effect, defendants may not take any adverse action against plaintiffs pursuant to § 13.-69(2), (7), if plaintiffs volunteer personal services to a candidate for election in the April 1993 special elections or the spring election for State Superintendent of Instruction that are limited to putting up yard signs, delivering brochures, stuffing envelopes and making telephone calls.