WISCONSIN EDUCATION ASSOCIATION COUNCIL, Political Action Committee, Plaintiff-Respondent,†

v.

WISCONSIN STATE ELECTIONS BOARD, Michael Brennan, David Halbrooks, John P. Savage, Don M. Millis, Randall Nash, Gregory J. Paradise, Judd David Stevenson and Christine Wiseman, Defendants-Appellants.

Court of Appeals

*No. 99–1685. Submitted on briefs December 6, 1999.—Decided March 16, 2000.*

## 2000 WI App 89

(Also reported in 610 N.W.2d 108.)

†Petition to review denied.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Alan Lee,* assistant

attorney general, and *James E. Doyle,* attorney general.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Robert H. Friebert* and *Matthew W. O'Neill* of *Friebert, Finerty & St. John, S. C.,* Milwaukee.

Before Eich, Roggensack and Deininger, JJ.

¶ 1.   DEININGER, J.   The Wisconsin State Elections Board, and its individual members, appeal a judgment granting declaratory relief to the Wisconsin Education Association Council, Political Action Committee.[1] The Board claims that the trial court erred in granting a declaratory judgment because there is no "justiciable controversy" on the present facts. We agree and, accordingly, we reverse the appealed judgment and remand for the entry of a judgment dismissing WEAC-PAC's complaint.

## BACKGROUND

¶ 2.   The seeds of the present litigation were sown in the summer of 1996 when the personal campaign committees of two Republican legislators made a series of contributions to county Republican parties in and around their respective legislative districts. Each legislator's personal committee transferred funds in amounts ranging between approximately $100 and $6,000 to a number of local county parties. The aggregate amounts transferred by each legislator exceeded $20,000. The local parties, in turn, contemporaneously

---

[1] We will refer to the Wisconsin State Elections Board and its members, collectively, as the Board, and to the plaintiff-respondent as WEAC-PAC.

transferred some or all of these funds to the Republican Party of Wisconsin.

¶ 3.   In September 1996, the chairperson of the Democratic Party of Wisconsin filed a complaint with the Board, alleging that the transfers from the legislators' personal campaign committees to the local party committees violated WIS. STAT. § 11.26(8)(b) (1997–98),[2] which limits a "political party" to receiving no more than "a total of $6,000 in value of its contributions in any calendar year from any specific committee or its subunits or affiliates."[3] Two weeks after the Democratic Party complaint, WEAC-PAC requested the Board to issue an opinion regarding the legality of the contributions made by the Republican legislators to the local parties. On October 15th, WEAC-PAC filed a complaint in Dane County Circuit Court seeking declaratory relief interpreting the relevant statutes and requesting that the Republican Party of Wisconsin and its affiliates be enjoined from violating § 11.26(8). The circuit court declined to issue a temporary restraining order, and WEAC-PAC voluntarily dismissed the action several days after the November 1996 general election.

¶ 4.   At its November 13, 1996 meeting, the Board, on a "straight partisan vote," voted to dismiss the Democratic Party's complaint regarding the

---

[2] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

[3] WISCONSIN STAT. § 5.02(13) defines "political party" as "a state committee registered under s. 11.05 organized exclusively for political purposes under whose name candidates appear on a ballot at any election, and all county, congressional, legislative, local and other affiliated committees authorized to operate under the same name."

Republican fund transfers.[4] Following the Board's vote to dismiss the Democratic Party complaint, its chairman told the Board that he interpreted the Board's action as a signal that the fund transfers engaged in by the Republicans were permissible notwithstanding the statutory language. To this statement, the Board chairman responded that any future complaints regarding similar transfers would be handled on a case-by-case basis. Another member of the Board, a Republican appointee, then commented that any parties and committees engaging in similar activities in the future would "act at their own peril."

¶ 5. In December 1996, WEAC-PAC requested the Board to issue a formal opinion interpreting the scope of the restrictions under WIS. STAT. § 11.26(8).[5] The Board directed its staff to prepare a draft opinion, and also requested staff to draft a proposed rule defining the term "affiliate" as used in § 11.26(8)(b).

---

[4] Unlike members of the Wisconsin State Ethics Board, who are prohibited from participating in political party activities during or for one year immediately prior to their service, members of the elections board are chosen, for the most part, precisely because they have loyalties to one of the two major political parties. See WIS. STAT. §§ 15.61 and 15.62. In the fall of 1996, the elections board was composed of four Republican appointees, three Democratic appointees, and an "independent" appointee selected by the Chief Justice of the Wisconsin Supreme Court. The independent member was apparently not in attendance at the November 13, 1996 meeting.

[5] WISCONSIN STAT. § 5.05(6) permits "[a]ny interested person" to make a written request to the Board to issue a formal opinion. The statute provides timelines for the Board to act upon the request. It also provides that "[n]othing in this subsection requires the issuance of an opinion by the board, nor precludes it from issuing an opinion or ruling in any other manner."

Ultimately, however, the Board voted not to issue a formal opinion in response to the WEAC-PAC request. WEAC-PAC then filed this action seeking declaratory and injunctive relief.

¶ 6. The amended complaint sets forth the preceding factual background and alleges, under 42 U.S.C. § 1983 (1994), that WEAC-PAC's First Amendment rights were violated. Specifically, WEAC-PAC alleges that because of "the Board's refusal to issue a formal opinion as requested by WEAC-PAC concerning the meaning of WIS. STAT. § 11.26, WEAC-PAC and other committees interested in making contributions similar to those [made by Republican committees in 1996] have had their First Amendment rights . . . impermissibly chilled." The complaint requests a judgment: (1) declaring that "the $6,000.00 statutory contribution limitation[ ] included in § 11.26(8)(a) and (b), WIS. STATS., applies in the aggregate to all contributions made to a state party, including any segment, division or subunit of a state party authorized to operate under the same name"; and (2) "[p]ermanently enjoining the [Board] from interpreting or applying §§ 5.02(13) and 11.26(8) . . . in a manner inconsistent with this court's declaratory judgment, and from enforcing the law differently with respect to the Republican party and Democratic party."[6]

¶ 7. Each party moved for summary judgment. The trial court denied the Board's motion and granted judgment to WEAC-PAC. The court concluded that the

---

[6] WEAC-PAC also pleaded an equal protection claim which was dismissed by the trial court and is not a subject of this appeal. It also sought its costs and fees, including actual attorneys fees under 42 U.S.C. § 1988 (1994). The attorneys fees claim remains pending in the trial court by stipulation of the parties, awaiting the disposition of this appeal.

present controversy was justiciable for purposes of granting declaratory relief and that WEAC-PAC had stated a "valid First Amendment claim." The court noted that "the Board did not offer any argument or analysis" regarding the interpretation of WIS. STAT. § 11.26(8), and that the Board had made it known that it did not necessarily disagree with WEAC-PAC's suggested construction of the statute. The court then interpreted § 11.26(8) and declared that the statutory contribution limitations in that section "apply in the aggregate to all contributions made to a state party, including any segment, division or subunit of a state party authorized to operate under the same name." Neither the trial court's decision nor its subsequent judgment granted any form of injunctive relief. The Board appeals the judgment granting declaratory relief.

## ANALYSIS

¶ 8.   The Board's principal claim of error is that the trial court should not have granted declaratory relief because there is no "justiciable controversy" between it and WEAC-PAC regarding the interpretation of WIS. STAT. § 11.26(8). We agree.

¶ 9.   A trial court can "exercise . . . discretion to entertain and decide an action for declaratory relief" only when there is a "justiciable controversy." *See Loy v. Bunderson,* 107 Wis. 2d 400, 409, 320 N.W.2d 175 (1982). The supreme court has enunciated four "standards" for a "justiciable controversy." *See id.* They are:

> "(1)  . . . [A] controversy in which a claim of right is asserted against one who has an interest in contesting it.

"(2)  The controversy must be between persons whose interests are adverse.

"(3)  The party seeking declaratory relief must have a legal interest in the controversy - that is to say, a legally protectible interest.

"(4)  The issue involved in the controversy must be ripe for judicial determination. . . ."

*Id.* at 409 (citing *State ex. rel. La Follette v. Dammann*, 220 Wis. 17, 22, 264 N.W. 627 (1936)). An appellate court must sustain a trial court's discretionary decision so long as the trial court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Loy*, 107 Wis. 2d at 414–15. Thus, in a declaratory judgment action, if the trial court "carefully examine[s] all the facts of record" in considering the four standards enumerated above, and reasonably concludes that a controversy is justiciable, we must uphold that conclusion. *See id.* at 415. If, on the other hand, the record demonstrates that one or more of the standards is not satisfied, declaratory relief should not be granted. *See Sipl v. Sentry Indem. Co.*, 146 Wis. 2d 459, 465, 431 N.W.2d 685 (Ct. App. 1988).

¶ 10.  The trial court erred when it determined that WEAC-PAC has asserted in this action "a claim of right . . . against one who has an interest in contesting it," and that there is a controversy "between persons whose interests are adverse" regarding the substantive issue WEAC-PAC raises. *See Loy*, 107 Wis. 2d at 409. The trial court briefly addressed these two standards within a single paragraph of its thirteen-page decision:

In light of the Board's posture and the statement to [the Democratic Party Chairman] "that if committees such as WEAC-PAC made contributions to the Democratic Party consistent with those of the

356

Republican committees at issue in the [chairman's] complaint, they would do so 'at their own peril,' " it seems reasonable to conclude that the Board does in fact have an interest in contesting the claim of right asserted by WEAC-PAC. Nor can the Board's arguments regarding the effect of its inaction be given credence to the extent that it is held that the Board's and WEAC-PAC's interests in this matter are not adverse. . . .[7]

We conclude, however, that the trial court could not reasonably determine, on the present record and under the law pertaining to it, that either standard was met.

¶ 11. Before addressing these two standards directly, it is necessary for us to resolve some confusion in the briefs regarding just what it is that must be disputed by the parties in this case in order to spawn a justiciable controversy. Although WEAC-PAC claims in its brief that it is "not trying to 'force' the Board to exercise its discretion, or to do anything," its complaint requests a judgment that (1) declares that the "$6,000.00 statutory contribution limitations" under

[7] The trial court does not identify the source of the quoted language in this passage from its decision. The quoted language is not taken from the affidavit of the Democratic Party Chairman, which is the only evidentiary submission in the record detailing what transpired at the Board's November 13, 1996 meeting. That affidavit does *not* attribute the "act at their own peril" statement to "the Board," nor does it indicate that the statement was directed at "committees such as WEAC-PAC." Rather, the chairman's affidavit avers that "[a]nother Republican appointee stated that the Democratic Party and its subunits, and those political action committees and campaign committees wishing to contribute to them, would 'act at their own peril' if they decided to make contributions similar to those described in paragraphs 19–27 of WEAC-PAC's Amended Complaint."

WIS. STAT. § 11.26(8) "appl[y] in the aggregate to all contributions made to a state party, including any segment, division or subunit of a state party authorized to operate under the same name," and (2) enjoins the Board "from interpreting or applying" the statutes "in a manner inconsistent with this court's declaratory judgment, and from enforcing the law differently with respect to" the Republican and Democratic Parties. Thus, the substance of the dispute, if there is indeed a dispute, must be over the meaning and application of the cited statute.[8]

¶ 12. WEAC-PAC seems to argue that the Board's refusal to issue a formal opinion interpreting the statute, coupled with its opposition to the granting of declaratory relief in this action, establishes the necessary adversity between WEAC-PAC and the Board to create a justiciable controversy over the meaning of WIS. STAT. § 11.26(8). But, a dispute over the Board's failure to issue an opinion, or over whether declaratory relief is merited on the present facts, is not a proxy for a dispute over the meaning of the statute which WEAC-PAC wants the court to interpret.

¶ 13. WEAC-PAC also asserts that it has two claims of right: "to learn the meaning of WIS. STAT. § 11.26(8)," and the right "to make contributions consistent with that statute." The second claim is not in dispute—nothing in the record indicates that the Board opposes WEAC-PAC's right to make contributions consistent with statutory requirements. There *is* a dispute regarding whether WEAC-PAC may "learn the meaning" of the statute by way of this declaratory

---

[8] The claim for injunctive relief does not present a separate and distinct substantive issue. Once the statute's meaning is conclusively resolved, the Board's obligation to apply it consistently and in a non-discriminatory fashion would seem clear.

judgment action, but, as we have noted, this dispute is not the one that matters.

¶ 14. We thus turn next to a consideration of whether the trial court could reasonably conclude that the Board, despite its assertions to the contrary,[9] has an interest in contesting WEAC-PAC's proffered interpretation of WIS. STAT. § 11.26(8), and that the Board's interests are adverse to those of WEAC-PAC with respect to the proposed interpretation.

¶ 15. WEAC-PAC posits that the Board has "an interest in having this statute remain undefined and subject to varying interpretations dependent upon the parties involved." This "interest" ostensibly arises because the Board wishes to avoid having to acknowledge "that the complaint against the Republican committees was not pursued [because] the Republican appointees were in the majority on the day of the vote." Even if the Board were to have impure motives for avoiding a court-declared interpretation of the statute, however, the only dispute thereby created concerns whether declaratory relief should be available to WEA C-PAC, not a dispute over what WIS. STAT. § 11.26(8) means.

¶ 16. WEAC-PAC also argues that the Board member's comment that committees engaging in similar conduct in the future would do so "at their own peril," constitutes "direct evidence that its interests are adverse" to the Board's. Again, however, the comment does not establish that WEAC-PAC's and the Board's

---

[9] WEAC-PAC concedes that the Board has expressed no interest in having WIS. STAT. § 11.26(8) interpreted differently than WEAC-PAC advocates. It acknowledges that the Board "has steadfastly refused to take any position with respect to the actual meaning of § 11.26(8) . . . except to say that it 'is not necessarily opposed to' WEAC-PAC's interpretation."

interests regarding the proper interpretation of WIS. STAT. § 11.26(8) are adverse, or that the Board has any interest in contesting WEAC-PAC's proffered interpretation. The impromptu comment of one member of an eight-member board, made at a time when nothing in the record indicates that a representative of WEAC-PAC was even present to hear it, hardly rises to the level of a threatened prosecution. Moreover, even if the comment could be interpreted as a threat of prosecution, it would only provide adversity between the parties *if* WEAC-PAC's position were that the statute *permits* it to make multiple $6,000 contributions to subunits of a political party. This, of course, is precisely the opposite of the interpretation WEAC-PAC seeks to have enshrined in a declaratory judgment.

¶ 17. The lack of a justiciable controversy on the present record is amply demonstrated by the similarity of the present facts to those reviewed by the supreme court in *Wisconsin Pharmaceutical Ass'n v. Lee*, 264 Wis. 325, 58 N.W.2d 700 (1953). There, a pharmacists' association sued the State Board of Pharmacy and its individual members to obtain a declaratory judgment interpreting a regulatory statute. The association sought to establish that the statute prohibited a practice whereby allegedly "unqualified" employees of physicians were allowed to prepare and dispense drugs. *See id.* at 328. The trial court reviewed the four standards for a justiciable controversy and concluded that the facts before it did not present one. *See id.* at 329. The supreme court affirmed, essentially adopting the trial court's reasoning as its own. *See id.* at 332.

¶ 18. The court in *Wisconsin Pharmaceutical* concluded that the association's claim against the pharmacy board was not " 'against one who has an interest in contesting it,' nor [was] it a 'controversy

between persons whose interests are adverse.' " *Id.* at 330. There, as here, no regulatory enforcement action had been taken or threatened against the plaintiff association, the gravamen of both disputes being the failure of a regulatory board to prosecute those whom the plaintiffs believed had violated the law. The court noted that the pharmacy board (like the elections board) "is charged with the statutory duty of investigation and institution of prosecution in the event [board members] feel that a violation has occurred. They are not required to institute prosecutions when, in their opinion, no violation has occurred." *Id.* at 329–30.[10]

■

¶ 19.   We conclude that the court's summary description of the dispute in *Wisconsin Pharmaceutical* can be applied with equal force to the present litigation: "At most there is a difference of opinion between the plaintiff[ ] and the defendants concerning the violation of a penal statute by persons not parties to this action." *Id.* at 329. And, to paraphrase another of the court's observations, "[t]he real controversy is between

[10] Under WIS. STAT. § 5.05(1)(c), the elections board "may" bring forfeiture actions or sue for injunctive relief when it believes laws under its administration have been violated. The board must also advise the appropriate district attorney, the attorney general, or the governor of "any facts within its knowledge or evidence in its possession which may be grounds for civil action or criminal prosecution." *See* § 5.05(3)(a). Also, WIS. STAT. § 11.66 permits "[a]ny elector" to "sue for injunctive relief to compel compliance with this chapter," if the Board fails to act on a reported violation. The October 1996 action against the Republican Party of Wisconsin was apparently commenced under this latter statute, but, as we have noted, that litigation was dismissed in November 1996.

plaintiff[ ] and the [Republicans who made the 1996 fund transfers]." *Id.* at 330.

¶ 20. Finally, WEAC-PAC asserts that the Board's argument that there is no justiciable controversy on this record "completely ignores the fact that WEAC-PAC alleged both a Wisconsin declaratory judgment action and an action pursuant to 42 U.S.C. § 1983 for a violation of its constitutional rights." This assertion implies that, because WEAC-PAC's request for a declaratory judgment is based in part on an alleged federal constitutional violation, even if Wisconsin's common-law criteria for maintaining a declaratory judgment action are not satisfied, the action may still continue if the separate, and impliedly different, criteria for the "ripeness" of a § 1983 claim are met.

¶ 21. Our response to this contention is two-fold. First, the present dispute, for reasons we have discussed, also fails to meet the federal ripeness test WEAC-PAC advances, which is "that the 'contentions of the parties ... present a real, substantial *controversy between parties having adverse legal interests*, a dispute definite and concrete, not hypothetical and abstract.' " *See Barker v. State of Wisconsin Ethics Bd.*, 815 F. Supp. 1216, 1219 (W.D. Wis. 1993) (emphasis added) (citation omitted).

¶ 22. Second, the facts in *Barker* illuminate what is lacking in the present record: a formal interpretation of a statute by a regulatory board, which prohibits an activity alleged to be protected under the First Amendment, in which the plaintiff wishes to engage. In order for WEAC-PAC to successfully align itself with the plaintiff in *Barker*, it would have to assert that the First Amendment requires an interpretation of WIS. STAT. § 11.26(8) that permits inter-committee transfers similar to those accomplished by the Republicans in

1996, and that the Board had wrongfully interpreted the statute to prohibit them. Instead, as we have noted, WEAC-PAC is in the awkward position of seeking an interpretation of the statute which would prohibit the very activity which it claims to be "impermissibly chilled" from pursuing by the Board's intransigence. Moreover, the Board has consistently expressed its lack of interest in opposing the interpretation WEAC-PAC advocates (see note 9, above).

¶ 23.  We thus conclude that the trial court erred in granting declaratory relief to WEAC-PAC, and we reverse the appealed judgment. On remand, the circuit court is to enter judgment dismissing WEAC-PAC's complaint. Given our conclusion and disposition, it is unnecessary to address whether sovereign immunity would also bar this suit, as the Board maintains; whether WEAC-PAC's proffered interpretation of WIS. STAT. § 11.26(8) is correct; or any of the several other related issues discussed by the parties in their briefs.

## CONCLUSION

¶ 24.  For the reasons discussed above, we reverse the appealed judgment and remand for the entry of a judgment consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded with directions.