Kenneth P. JACOBUS; Kenneth P. Jacobus, P.C.; Wayne Anthony Ross; Ross & Miner, P.C.; and Scott A. Kohlhaas, Plaintiffs,

v.

State of ALASKA; and State of Alaska, Alaska Public Offices Commission, Defendants.

No. A97–0272 CV (JKS).

United States District Court, D. Alaska.

April 10, 2001.

---

*ORDER*

SINGLETON, District Judge.

## INTRODUCTION

Presently before the Court are motions requesting summary judgment filed by both Defendants and Plaintiffs. *See* Docket No. 39 (Mot.); 40A (Opp'n/Mot.); 42 (Reply/Opp'n). Plaintiffs have requested oral argument on the motions for summary judgment. *See* Docket No. 43.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are lawyers who regularly contribute their services *pro bono* to those

---

1. Whether to hear oral argument lies within the discretion of the trial court. *See United States v. Cheely*, 814 F.Supp. 1430, 1436 n. 4 (D.Alaska 1992), *aff'd*, 36 F.3d 1439 (9th Cir. 1994). As the parties have thoroughly briefed the issues before the Court, oral argument is not necessary.

political parties with views and programs they endorse. In May of 1996, the Alaska Legislature enacted 48 SLA 1996 (the "Act"), which addresses election campaigns, campaign financing, and related topics. The Act, which became effective on January 1, 1997, defines "contributions" to political parties and, in addition to imposing other restrictions, limits contributions to political parties to $5,000 per individual per year and prohibits certain contributions to parties by corporations and other entities.[2] It appears that in the ordinary course of business Plaintiffs have made contributions to and incurred expenses on behalf of the parties of their choice in excess of the Act's $5,000 per person limit. They expect to continue this practice. Plaintiffs therefore bring this action arguing that attempts to limit the donation of their professional services to the parties of their choice infringes their rights under the United States Constitution. They seek a construction of the Act that would exempt from its coverage the kinds of contributions they wish to make.

This Court stayed all proceedings in this action pending construction of the statute at issue by the courts of the State of Alaska. *See* Docket No. 17. On April 16, 1999, the Alaska Supreme Court issued a decision affirming in part and reversing in part Judge Wolverton's decision, and on February 22, 2000, the United States Supreme Court denied a petition for a *writ of certiorari* filed by the Alaska Civil Liberties Union. *See State v. Alaska Civil Liberties Union*, 978 P.2d 597 (Alaska 1999), *cert. denied*, 528 U.S. 1153, 120 S.Ct. 1156, 145 L.Ed.2d 1069 (2000) (*"AkCLU"*). Presently before the Court are motions requesting summary judgment regarding the legality of certain provisions of the Act that were not addressed by the Alaska Supreme Court. *See* Docket Nos. 39;

40A. This Court has jurisdiction under 28 U.S.C. § 1331. *See* 28 U.S.C. § 1331.

## DISCUSSION

### I. Standard of Review

#### A. Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[a] party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may ... move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof." *See* Fed.R.Civ.P. 56(a). Summary judgment is appropriate if the Court finds that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c). Courts will construe all evidence and draw all evidentiary inferences in favor of the non-moving party. *See* 10A *Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure* § 2727, at 459, 459 n. 5 (3d ed.1998) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)).

A dispute over a material fact exists if the evidence would allow a reasonable factfinder to return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48, 106 S.Ct. 2505. The

---

**2.** Contributions include, but are not limited to, financial contributions and personal ser-

vices of certain types, including legal services provided by certain classes of donors.

non-moving party may defeat the summary judgment motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, mere allegations of factual dispute, without more, will not defeat an otherwise proper motion. *See Provenz v. Miller,* 102 F.3d 1478, 1489–90 (9th Cir. 1996); *Angel v. Seattle–First Nat'l Bank,* 653 F.2d 1293, 1299 (9th Cir.1981) ("A motion for summary judgment cannot be defeated by mere conclusory allegations unsupported by factual data."). It is appropriate for the Court to decide the issues before it on summary judgment as there is no dispute as to any material fact.

### B. Statutory Construction

■ The Supreme Court has instructed courts reviewing an agency's construction of a statute, such as the Act, to apply a two-prong test. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Under the analysis in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* the reviewing court must first examine the statute itself to determine whether Congress has spoken directly to the precise question. *See Chevron,* 467 U.S. at 842, 104 S.Ct. 2778. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43, 104 S.Ct. 2778. When, however, an agency's interpretation of a statute is in conflict with the plain language of the statute, reviewing courts should not defer to the agency's interpretation. *See Downey v. Crabtree,* 100 F.3d 662, 666 (9th Cir. 1996) (quoting *Nat'l R.R. Passenger Corp. v. Boston & Me. Corp.,* 503 U.S. 407, 417, 112 S.Ct. 1394, 118 L.Ed.2d 52 (1992)).

■ Second, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *See Chevron,* 467 U.S. at 843, 104 S.Ct. 2778. "In determining whether an agency's construction is permissible, the court considers whether Congress has explicitly instructed the agency to flesh out specific provisions of the general legislation, or has impliedly left to the agency the task of developing standards to carry out the general policy of the statute." *Tovar v. United States Postal Serv.,* 3 F.3d 1271, 1276 (9th Cir.1993).

> If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.

*Chevron,* 467 U.S. at 843–44, 104 S.Ct. 2778; *see also Ass'n of Pub. Agency Customers, Inc. v. Bonneville Power Admin.,* 126 F.3d 1158, 1169 (9th Cir.1997) ("When relevant statutes are silent on the salient question, we assume that Congress has implicitly left a void for an agency to fill. We must therefore defer to the agency's construction of its governing statutes, unless that construction is unreasonable."). Courts are to apply the *Chevron* test in chronological order beginning with the first prong. *See Chevron,* 467 U.S. at 842–43, 104 S.Ct. 2778. The second prong of the test is only used if the plain language of the statute is ambiguous, unclear or absurd. *See Bowen v. Hood,* 202 F.3d 1211, 1218 (9th Cir.2000); *Defenders of Wildlife v. Browner,* 191 F.3d 1159, 1162 (9th Cir.1999).

In this case, the Court is not considering a federal statute. Its goal is to interpret the state statute as it believes the Alaska

Supreme Court would interpret it. Nevertheless, the Court concludes that the Alaska Supreme Court would apply a methodology similar to the one adopted by the United States Supreme Court in the *Chevron* line of cases. *See Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903 (Alaska 1987) (applying reasonableness standard to agency's interpretation); *see also Totemoff v. State*, 905 P.2d 954, 968 (Alaska 1995).

## II. Donations to Political Parties

The Act's requirement that "[a]n individual may contribute not more than ... $5,000 per year to a political party," *see* AS 15.13.070(b)(2), has been upheld by the Alaska Supreme Court, *see AkCLU*, 978 P.2d at 625. The Act states that a contribution

(A) means a purchase, payment, promise or obligation to pay, loan or loan guarantee, deposit or gift of money, goods, or services for which charge is ordinarily made and that is made for the purpose of influencing the nomination or election of a candidate, and in AS 15.13.010(b) [3] *for the purpose of influencing a ballot proposition or question, including the payment by a person other than a candidate or political party, or compensation for the personal services of another person, that are rendered to the candidate or political party*;

(B) does not include

(i) services provided without compensation by individuals volunteering a portion or all of their time on behalf of a candidate or ballot proposition or question, but it does include professional services volunteered by individuals for which they ordinarily would be paid a fee or wage;

(ii) services provided by an accountant or other person to prepare reports and statements required by this chapter; or

(iii) ordinary hospitality in a home[.]

*See* AS 15.13.400(3). In *AkCLU*, the Alaska Supreme Court did not address, and the parties disagree as to whether donations of money and personal services provided to political parties that are not made for the explicit purpose of nominating or electing a candidate (*e.g.*, for newsletters, issue advocacy, party building, promoting ballot issues and voter registration) are contributions covered by the Act. *See* Docket Nos. 40A at 5–12; 42 at 3–6.

Defendants interpret "the Act's definition of a 'contribution' to include all donations to a political party.... [and have] concluded that the primary function of political parties is to further political agendas by electing candidates." *See* Docket No. 40A at 6 (internal quotation omitted). Thus, since Defendants view "a payment to a political party as a contribution ... [because] ultimately the payment is intended to influence the outcome of an election," *see id.*, Defendants argue that regulating these donations as contributions is constitutional. Plaintiffs disagree and argue that restricting donations to political parties for purposes other than candidate electing or nominating is unconstitutional. *See* Docket No. 42 at 2–4.[4]

---

**3.** "Except as otherwise provided, this chapter applies to contributions, expenditures and communications made by a candidate, group, municipality or individual for the purpose of influencing the outcome of a ballot proposition or question as well as those made to influence the nomination or election of a candidate." AS 15.13.010(b).

**4.** Defendants argue that the Alaska Supreme Court "disagrees with Plaintiffs' proposed

contrary interpretations that would permit unlimited, unregulated donations." *See* Docket No. 40A at 6 (citing *AkCLU*, 978 P.2d at 608 n. 67). The Alaska Supreme Court stated "AkCLU notes, for example, that federal law allows corporations and other entities to make unlimited contributions to political parties to use in general party activities." *See AkCLU*, 978 P.2d at 608. "The Act, by contrast, bans such contributions." *Id.* at 608 n.

There are, therefore, two distinct questions. First, what does the statute mean? This is a question of interpretation informed by the *Chevron* line of cases. The second question asks is the statute as interpreted constitutional? These questions will be addressed in turn.

Having reviewed the statute, it appears that its "plain meaning" does not clearly conflict with the meaning adopted by the agency and championed by the State. While the Alaska courts could conflate the two questions and consider the constitutionality of alternate interpretations in arriving at an interpretation that would result in a statute that was constitutional as interpreted, a federal court lacks this flexibility. It cannot put a gloss on the statute that limits its plain meaning or rejects the agency's interpretation. The ·Court must therefore consider the constitutionality of the statute under the meaning assigned to it by Defendants. When the Court does this, it appears that Plaintiffs are correct. As interpreted by Defendants, the statute is in some respects unconstitutional.

## A. Constitutional Limitations

■ "[T]he right of association is a basic constitutional freedom, that is closely allied to freedom of speech and a right which, like free speech, lies at the foundation of a free society." *Buckley v. Valeo,*

424 U.S. 1, 25, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (internal quotations and citations omitted). The First and Fourteenth Amendments to the United States Constitution protect the rights of political expression and association. *See* U.S. Const. amends. I; XIV; *Citizens Against Rent Control/Coalition for Fair Hous. v. City of Berkeley,* 454 U.S. 290, 295, 102 S.Ct. 434, 70 L.Ed.2d 492 (1981); *Buckley,* 424 U.S. at 15, 96 S.Ct. 612. "[T]he primary First Amendment problem raised by . . . contribution limitations is their restriction of one aspect of the contributor's freedom of political association." *Buckley,* 424 U.S. at 24, 96 S.Ct. 612.[5]

> In view of the fundamental nature of the right to associate, governmental action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny. Yet, it is clear that neither the right to associate nor the right to participate in political activities is absolute. Even a significant interference with protected rights of political association may be sustained if the State demonstrates a sufficiently important interest and employs means closely drawn to avoid unnecessary abridgment of associational freedoms.

*Id.* at 25, 96 S.Ct. 612 (internal quotations and citations omitted).[6]

---

67. Contrary to Defendants' assertions, it does not appear that the Alaska Supreme Court ruled on either Defendants' interpretation of what constitutes a contribution or the constitutionality of these different types of contributions, but rather was simply noting the difference in the laws as they pertained to bans on independent expenditures by non-group entities. Nevertheless, it does appear that Defendants' interpretation of the statute is accurate. Unfortunately, while accurate, it renders the statute unconstitutional.

5. "States have no greater power to restrain the individual freedoms protected by the First Amendment than does the Congress." *Wal-*

*lace v. Jaffree,* 472 U.S. 38, 48–49, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985).

6. The United States Supreme Court seems to be divided over the appropriate level of scrutiny. *See Nixon v. Shrink Mo. Gov't PAC,* 528 U.S. 377, 412, 120 S.Ct. 897, 145 L.Ed.2d 886 (2000) (Thomas, J., dissenting) (disagreeing with "the majority's refusal to apply strict scrutiny to contribution limits"); *id.* at 400, 120 S.Ct. 897 (Breyer, J., concurring) (stating that, in regard to contribution limits, "there is no place for a strong presumption against constitutionality, of the sort often thought to accompany the words 'strict scrutiny' ").

■ The Supreme Court has stated that "the prevention of corruption and the appearance of corruption," is a "constitutionally sufficient justification" to limit campaign contributions to candidates. *See Nixon v. Shrink Mo. Gov't PAC*, 528 U.S. 377, 388, 120 S.Ct. 897, 145 L.Ed.2d 886 (2000). Furthermore, the Supreme Court has "consistently held that restrictions on contributions require less compelling justification than restrictions on independent spending." *See Fed. Election Comm'n v. Mass. Citizens for Life, Inc.*, 479 U.S. 238, 259–60, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986).[7] Nonetheless, if a law burdens political speech, the burden is on the Government to justify its restriction. *See Nixon*, 528 U.S. at 387–88, 120 S.Ct. 897.

The permissible scope of statutory restrictions on campaign financing varies according to the type of financing restricted. In *Buckley v. Valeo*, the Supreme Court stated that the regulation of contributions, is generally permissible, while the regulation of expenditures generally is not. *See Buckley*, 424 U.S. at 21–27, 96 S.Ct. 612. The Supreme Court stated that restrictions on expenditures, made by individuals and groups to further their own political views "impose direct and substantial restraints on the quantity of political speech." *See id.* at 39, 96 S.Ct. 612.

The *Buckley* Court further noted that

a limitation upon the amount that any one person or group may contribute to a candidate or political committee entails only a marginal restriction upon the contributor's ability to engage in free communication. A contribution serves as a general expression of support for the candidate and his views, but does not communicate the underlying basis for the support. The quantity of communication by the contributor does not increase perceptibly with the size of his contribution, since the expression rests solely on the undifferentiated, symbolic act of contributing. At most, the size of the contribution provides a very rough index of the intensity of the contributor's support for the candidate. A limitation on the amount of money a person may give to a candidate or campaign organization thus involves little direct restraint on his political communication, for it permits the symbolic expression of support evidenced by a contribution but does not in any way infringe the contributor's freedom to discuss candidates and issues. While contributions may result in political expression if spent by a candidate or an association to present views to the voters, the transformation of contributions into political debate involves speech by someone other than the contributor.

*See id.* at 20–21, 96 S.Ct. 612 (footnote omitted). The *Buckley* Court concluded that, while the federal act's limitations on expenditures could not be constitutionally justified, its limitations on campaign contributions furthered important governmental interests by preventing corruption and the appearance of corruption in elective politics through *quid pro quo* contribution. *See id.* at 26–29, 96 S.Ct. 612. "Since *Buck-*

---

7. *See, e.g., Roberts v. United States Jaycees*, 468 U.S. 609, 623, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984) ("Infringements on [the right to associate for expressive purposes] may be justified by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms."); *NAACP v. Button*, 371 U.S. 415, 438, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963) ("The decisions of this Court have consistently held that only a compelling state interest in the regulation of a subject within the State's Constitutional power to regulate can justify limiting First Amendment freedoms."); *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 460–61, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) ("[S]tate action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny.").

*ley*, the [Supreme] Court has stated that 'preventing corruption or the appearance of corruption are the only legitimate and compelling government interests thus far identified for restricting campaign finances.' " *Fed. Election Comm'n v. Colo. Republican Fed. Campaign Comm.*, 213 F.3d 1221, 1227 (10th Cir.2000) (quoting *Fed. Election Comm'n v. Nat'l Conservative Political Action Comm.*, 470 U.S. 480, 496–97, 105 S.Ct. 1459, 84 L.Ed.2d 455 (1985)).

The Supreme Court's analysis regarding contribution limitations has primarily focused on contributions to candidates. Neither in *Buckley*, nor in its progeny, has the Supreme Court directly ruled on the constitutionality of soft money contributions.[8] Nonetheless, the Supreme Court has found that, "the opportunity for corruption posed by these greater opportunities for [soft money] contributions is, at best, attenuated." *See Colo. Republican Fed. Campaign Comm. v. Fed. Election Comm'n*, 518 U.S. 604, 616, 116 S.Ct. 2309, 135 L.Ed.2d 795 (1996). However, the Supreme Court has addressed the propriety of limiting contributions for some types of soft money activities when there is no threat or appearance of corruption, and concluded that such restrictions were unconstitutional. For example, in *Citizens Against Rent Control/Coalition for Fair Housing v. City of*

*Berkeley*, the Supreme Court found that an ordinance that limited contributions on a ballot measure was unconstitutional under the First Amendment. *See City of Berkeley*, 454 U.S. at 296–97, 102 S.Ct. 434 ("*Buckley* identified a single narrow exception to the rule that limits on political activity were contrary to the First Amendment. The exception relates to the perception of undue influence of large contributors to a *candidate*.").[9]

Various other courts and commentators have addressed the propriety of banning soft money contributions. *See, e.g., Wash. State Republican Party v. Wash. State Pub. Disclosure Comm'n*, 141 Wash.2d 245, 4 P.3d 808, 824 (2000) (finding restrictions on contributions to political parties unconstitutional); Bradley A. Smith, *Soft Money, Hard Realities: The Constitutional Prohibition On A Soft Money Ban*, 24 J. Legis. 179, 199 (1998) (stating that it would be unconstitutional to ban soft money contributions to political parties for issue advocacy). *But see* Fewell, *supra*, at 132 ("Capping soft money contributions would not offend [the Constitution]."). In *Washington State Republican Party v. Washington State Public Disclosure Commission*, the Washington Supreme Court addressed the constitutionality of restricting contributions to political parties for issue advocacy. *See Wash. State Republi-*

---

**8.** " 'Soft money' describes contributions to political parties (as opposed to candidates) that solely support party-building activities, such as: voter registration, 'get out the vote' drives, issue advocacy, and the purchase of campaign items such as slate cards, bumper stickers, and yard signs." Brent A. Fewell, *Awash in Soft Money and Political Corruption: The Need For Campaign Reform*, 36 Duq. L.Rev. 107, 109 (1997); *see also Colo. Republican Fed. Campaign Comm. v. Fed. Election Comm'n*, 518 U.S. 604, 616, 116 S.Ct. 2309, 135 L.Ed.2d 795 (1996) (providing examples of soft money activities such as voter registration and get out the vote drives).

**9.** In reaching its decision, the Court noted that

[i]n *C & C Plywood Corp. v. Hanson*, ... the Ninth Circuit struck down a Montana statute prohibiting corporate contributions supporting or opposing ballot measures. In so doing the court noted:

"The state interest in preventing corruption of officials, which provided the basis for the Supreme Court's finding in *Buckley* that restrictions could permissibly be placed on contributions, is not at issue here."

*See City of Berkeley*, 454 U.S. at 297, 102 S.Ct. 434 (quoting *C & C Plywood Corp. v. Hanson*, 583 F.2d 421, 425 (9th Cir.1978)).

*can Party,* 4 P.3d at 824. The Washington Supreme Court determined that

> [c]ontributions received by a political party and expended for issue advocacy are not the sort of contributions which *Buckley* held could be limited. They are not contributions to a candidate, i.e., not money contributed to the candidate to be spent on his [or her] campaign.... The corruption rationale simply does not apply in the case of contributions and expenditures for issue advocacy.

*See id.* (quotations omitted). The court further noted that "[t]here is no justification for limiting the amount of contributions ... which are used for issue advocacy." *See id.* at 825.

 Analyzing the record and arguments before the Court, it is clear that restricting donations to political parties for purposes unrelated to nominating or electing candidates (*e.g.,* issue advocacy, voter registration) significantly interferes with the protected rights of speech and association. Moreover, no court has rec-

ognized a risk of *quid pro quo* corruption from such activities, nor is there any appearance of corruption from such activities since the parties and candidates do not share a metaphysical identity and the donations of time, money and services are not being made for nominating and electing candidates. While candidates and politicians can be corrupted by financial contributions, it would not appear that donations to parties would have a sufficient connection with any specific elected official to satisfy the tests imposed by the United States Supreme Court on political finance reform. Consequently, it does not appear constitutional to ban soft money contributions to political parties and Defendants' arguments fail under either the compelling interest or the significantly important interest test.[10] Thus, donations to political parties for purposes other than nominating or electing purposes (*e.g.,* issue advocacy, voter registration) may not constitutionally be considered contributions subject to regulation under the Act. It is not necessary to resolve the

**10.** The parties differ with respect to the definition of a political party, its purpose and therefore what constitutes a contribution. Courts, commentators, and dictionaries diverge as well. *See, e.g.,* AS 15.60.010(21) ("an organized group of voters that represents a political program and that either nominated a candidate for governor who received at least three percent of the total votes cast for governor at the preceding general election or has registered voters in the state equal in number to at least three percent of the total votes cast for governor at the preceding general election"); *Petition of Soto,* 236 N.J.Super. 303, 565 A.2d 1088, 1097 (1989) ("an unincorporated association of persons which sponsors certain ideas of government or maintains certain political principles or beliefs in the public policies of the government"); Blacks Law Dictionary 1158 (6th ed. 1990) ("An association of individuals whose primary purposes are to promote or accomplish elections or appointment to public offices, positions, or jobs."). It is not necessary nor appropriate for the Court to further define or declare what

a political party is, as the Alaska Legislature has already done so. Furthermore, Alaska Public Offices Commission's ("APOC") interpretation of "[Alaska's] campaign finance law ... as making all donations to a political party regulated contributions," *see* Docket No. 40A at 8, is entitled to deference as its interpretation is reasonable.

However, the contributions restrictions as *interpreted* by APOC are *not* constitutional because its interpretation, while binding on this Court, violates the First Amendment's restrictions on speech and association for the reasons previously stated. Moreover, it should be noted that political parties engage in activities that are protected by the First Amendment (*e.g.,* activities such as issue advocacy and ballot propositions which are clearly not done for the purpose of electing a candidate) and that parties and their candidates do not necessarily share an identity of interest or have a "metaphysical identity." *See Fed. Election Comm'n v. Colo. Republican Fed. Campaign Comm.,* 213 F.3d 1221, 1227 n. 5 (10th Cir.2000).

question whether any attempt to limit soft money would be unconstitutional. Suffice to say any attempt to limit the contributions of services for these purposes must fail.[11]

### III. $5,000 Limit on Contribution of Volunteer Professional Services

■ The Act states that while the contribution limit does not include "services provided without compensation by individuals volunteering a portion or all of their time on behalf of a candidate or ballot proposition or question, ... it does include professional services volunteered by individuals for which they ordinarily would be paid a fee or wage." *See* AS 15.13.400(3)(B)(i). While the Alaska Supreme Court has not directly addressed this issue, *see generally AkCLU,* 978 P.2d 597, the United States Supreme Court has provided some guidance as to the constitutionality of limiting volunteer services.

In *Buckley,* the United States Supreme Court stated that the federal "contribution ceilings thus limit one important means of associating with a candidate or committee, but leave the contributor free to become a member of any political association *and to assist personally* in the association's efforts on behalf of candidates." *See Buckley,* 424 U.S. at 22, 96 S.Ct. 612 (emphasis added). "While an expenditure limit precludes most associations from effectively amplifying the voice of their adherents, (thus interfering with the freedom of the adherents as well as the association), the contribution limits leave the contributor free to become a member of any political association *and to assist personally* in the association's efforts on behalf of candi-

dates." *Nixon,* 528 U.S. at 387, 120 S.Ct. 897 (internal citations and quotations omitted) (emphasis added).

However, "[t]he Supreme Court has found sufficient justification for a prohibition on volunteering to political campaigns in the case of government workers." *See Barker v. State of Wis. Ethics Bd.,* 841 F.Supp. 255, 261 (W.D.Wis.1993). In *United States Civil Service Commission v. National Association of Letter Carriers,* the Court reasoned that

> it is not only important that the Government and its employees in fact avoid practicing political justice, but it is also critical that they appear to the public to be avoiding it, if confidence in the system of representative Government is not to be eroded to a disastrous extent.

> Another major concern of the restriction against partisan activities by federal employees ... was the conviction that the rapidly expanding Government work force should not be employed to build a powerful, invincible, and perhaps corrupt political machine.

*See United States Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers,* 413 U.S. 548, 565, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973).

Other Courts have applied the Supreme Court's reasoning in *Buckley* and concluded that it is improper to limit volunteer services. *See Barker,* 841 F.Supp. at 262 ("The [*Buckley*] Court found the election act's contribution ceilings to be constitutional in part because Congress did not attempt to limit citizens' volunteering their labor to political campaigns."). In *Barker*

---

11. The Court is aware that legislation is currently pending before Congress that would purport to limit soft money contributions. The Court is also aware that commentators on that legislation have pointed to recent incidents which they view as linking soft money and corruption. Defendants do not point to similar incidents in Alaska. Even if they could, it would not appear that such incidents would meet the tests established by the United States Supreme Court. In any event, the Court is considering a state statute, not a federal statute that may never be enacted.

*v. State of Wisconsin Ethics Board,* the court addressed the issue of whether a statute banning lobbyists from volunteering services to political associations was constitutional and concluded it was not constitutional. *See id.* at 263–64. The *Barker* Court found that the defendants failed "to identify and evaluate the precise interests justifying the burden on lobbyists' First Amendment rights imposed by the prohibition ... [and] fail[ed] to show that the provision [was] closely drawn to avoid unnecessary abridgment of associational freedoms." *See id.* at 261 (internal quotations omitted). In reaching its decision, the *Barker* Court stated that the prohibition on lobbyists

> from volunteering personal services to political associations.... far surpasses the contribution limitations that the Court found constitutional in *Buckley.* Whereas *Buckley* endorsed limits on financial contributions in the context of unregulated volunteering, the Wisconsin statute prohibits all contributions of volunteer services in the context of financial contribution limits.

*See id.* at 262–63.

Similarly, the court in *Fair Political Practices Commission v. Superior Court,* 25 Cal.3d 33, 157 Cal.Rptr. 855, 599 P.2d 46, 53 (1979), applied *Buckley* to strike down a California statute that prohibited lobbyists from contributing to political candidates. There, the California Supreme Court stated that "[t]he govern-mental interests held to warrant substantial restrictions on political rights in [*Letter Carriers*] have no greater application to lobbyists than to other private campaign contributors." *See Fair Political Practices Comm'n,* 157 Cal.Rptr. 855, 599 P.2d at 53 (internal quotation omitted); *see also* Craig M. Engle, John Dilorenzo, Jr. & Charles Spies, *Buckley Over Time: A New Problem With Old Contribution Limits,* 24 J. Legis. 207, 217 (1998) (explaining that despite *Buckley's* approval of limits on financial contributions, individuals are still "free to engage in independent political expression, to associate actively through volunteering their services").[12]

However, in *Petition of Soto,* the New Jersey Supreme Court upheld a ban on prohibiting political contributions by casino employees. *See Petition of Soto,* 236 N.J.Super. 303, 565 A.2d 1088, 1097–98 (1989). In reaching its conclusion, the court found that there was a "compelling state interest in maintaining the integrity of political parties and organizations from undue influence by those individuals who, by the very nature of their employment, play a pivotal role in the casino industry [which] justifies upholding the restrictions." *See Soto,* 565 A.2d at 1098. However, in restricting volunteer activities of casino employees, the court determined that the corruption and threat of corruption surrounding the gambling industry and casino employees was sufficient to jus-

**12.** The California Supreme Court found three problems with the statute.

> First, the prohibition applies to contributions to any and all candidates even though the lobbyist may never have occasion to lobby the candidate. Secondly, the definition of lobbyist is extremely broad, to include persons who appear regularly before administrative agencies seeking to influence administrative determinations in favor of their clients. Thirdly, the statute does not discriminate between small and large but prohibits all contribution. Thus, it is not narrowly directed to the aspects of political association where potential corruption might be identified. While either apparent or actual political corruption might warrant some restriction of lobbyist associational freedom, it does not warrant total prohibition of all contributions by all lobbyists to all candidates.

> *Fair Political Practices Comm'n,* 157 Cal.Rptr. 855, 599 P.2d at 52–53.

tify limitations on political activities by casino employees. *See id.* at 1105–06.

In the case at bar, it does not appear that the Act's limitations on volunteering professional services which impact an individual's freedom of speech and association rights are constitutional. First, Defendants have not demonstrated a sufficiently important interest impacted by volunteered services, nor employed a means closely drawn to avoid unnecessary abridgment of these fundamental freedoms. Specifically, Defendants have not provided any compelling evidence or arguments as to how limiting an individual from volunteering their time to perform a constitutionally protected service for which that individual ordinarily would be paid a fee or wage would further the governmental interests of avoiding corruption or the appearance of corruption.

Second, assuming *arguendo* that there was a compelling or sufficient interest, the limitation provisions are nonetheless vague, overbroad and otherwise not in accord with the Constitution. *See, e.g., Coates v. City of Cincinnati,* 402 U.S. 611, 612–13, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971); *United States v. Harriss,* 347 U.S. 612, 617–18, 74 S.Ct. 808, 98 L.Ed. 989 (1954). This is not a situation similar to that in *Letter Carriers,* where the law prohibited government employees from working on campaigns because of both the appearance of impropriety of government employees working on government campaigns and the danger that the govern-

ment work force would be corruptly employed. *See Letter Carriers,* 413 U.S. at 565, 93 S.Ct. 2880. Nor is this similar to *Soto* where "crime and corruption are inherent in the casino industry," *see Soto,* 565 A.2d at 1104, which would justify limitations on political activities by professional casino employees.

Here, the Act does not just limit volunteerism to discreet and identifiable groups that pose or could pose a potential corruptive influence, it limits volunteer activities of all individuals providing professional services without regard to the risk of corruption.[13] Thus, it would appear that the Act is overbroad and vague. In sum, the Act's restriction on individuals volunteering their time (*i.e.,* as opposed to contributing large amounts of money) by donating a type of professional service is unconstitutional, based on the record and arguments before the Court.

## IV. Prohibition on Corporations Providing Contributions to Political Parties

■ The Act states that "[a] corporation, company, partnership, firm, association, organization, business trust or surety, labor union, or publicly funded entity . . . may not make a contribution to a candidate or group." *See* AS 15.13.074(f). As a political party is a group, *see* AS 15.13.400(5)(A)-(B), a corporation is prohibited from making a contribution to a political party. The United States Supreme Court and the Alaska Supreme

---

13. The Act does not define "professional service." However, Alaska regulates a wide variety of professions. *See, e.g.,* AS 08.01.010 08.98.250 (regulating various professions from accountants and attorneys to engineers and veterinarians). It is unclear how accountants volunteering their time to check party finances, engineers designing an auditorium for citizens to engage in public debate, attorneys providing legal advice, or veterinarians giving check ups to the local political party mascot somehow corrupts the political process in such a significant way to justify restricting these individuals from volunteering their time to ensure the health of our democracy. Furthermore, if, as found by other courts, restrictions on lobbyists' volunteer efforts with political parties is unconstitutional, it is unclear how a restriction on every individual donating any type of professional service to a political party is constitutional.

Court have both determined that restrictions on corporate contributions are permissible. *See Fed. Election Comm'n v. Mass. Citizens For Life, Inc.,* 479 U.S. 238, 256–60, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986); *Buckley,* 424 U.S. at 25–29, 96 S.Ct. 612; *AkCLU,* 978 P.2d at 614, 634. Thus, as it is clear that the Act's prohibitions on corporate contributions to a political party for the purpose of nominating or electing a candidate is permissible, the Court does not need to address this matter again.

## CONCLUSION

In sum, if used for non-candidate nominating or electing purposes, donations to a political party cannot constitutionally be restricted; the restriction on donating volunteer professional services is unconstitutional; and the prohibition on corporations, including professional corporations, providing contributions is constitutional. Specifically,

1. AS 15.13.070(b)(2) is constitutional to the extent that an individual may contribute not more than $5,000 per year to a political party for the purpose of nominating or electing a candidate. To the extent that donations to political parties that are made for a purpose other than influencing the nomination or election of a candidate are restricted, AS 15.13.070(b)(2) and AS 15 .30.400(3) are unconstitutional;

2. The provision in AS 15.13.400(3)(B)(i) restricting or limiting volunteering professional services is unconstitutional; and,

3. AS 15.13.074(f) is constitutional.

IT IS THEREFORE ORDERED:

The motion requesting oral argument at Docket No. 43 is DENIED. The motion requesting summary judgment at Docket No. 39 is GRANTED IN PART AND DENIED IN PART. The motion request-

ing summary judgment at Docket No. 40A is GRANTED IN PART AND DENIED IN PART. Defendants are hereby enjoined from enforcing the Act in a manner inconsistent with this Order.